UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                       :

UNITED STATES OF AMERICA         :

                                        :      23-CR-0061-PGG

                -v-                     :

                                        :

DANIEL BERTINI                      :

                                        :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………...3

I.    INTRODUCTION……………………………………………………………...6

II.   RELEVANT FACTS…………………………………………………………...7

      A.  The May 26, 2021 warrant sought historical cell phone location information and toll
          records of Mr. Bertini's phone……………………………………………...……9

      B.  The September 27, 2021 warrant sought all stored electronic communications
          associated with Mr. Bertini's Google account………………………………….……11

      C.  The December 3, 2021 warrant sought to seize and search Mr. Bertini's cell phone….13

III.  LAW AND ANALYSIS…………………………………………………………....15

      A.  The Court should suppress the materials seized pursuant to the three warrants because
          the affidavits do not provide any particularized facts linking the things to be searched
          with the criminal activities, relying instead solely on the affiant's training and expertise
          and thus rendering the warrants unsupported by probable cause……………………..17

          1.  All three warrants lacked a sufficient nexus between the things and places to be
              searched and alleged criminal activities………………………...…………18

              a.  The cell site location information and toll warrant is unsupported by
                  probable cause because the affidavit did not establish a sufficient
                  nexus between Mr. Bertini's phone and the attempted burglaries…..20

              b.  The stored electronic communications warrant is unsupported by
                  probable cause because the affidavit did not establish a sufficient
                  nexus between Mr. Bertini's Google account and the attempted
                  burglaries…………………………………………………...…22

              c.  The cell phone warrant is unsupported by probable cause because the
                  affidavit did not establish a sufficient nexus between Mr. Bertini's
                  phone and the attempted burglaries………………………….…24

          2.  Without any particularized facts linking the places and things to be searched
              with the attempted burglaries, the affiant's "training and expertise" is wholly
              insufficient to establish probable cause for the warrants………………...……26

IV.   CONCLUSION…………………………………………………………………..29

# TABLE OF AUTHORITIES

## <u>Cases:</u>

*Arizona v. Gant,*

 556 U.S. 332 (2009)……………………………………………………………...17

*Carpenter v. United States,*

 138 S. Ct. 2206 (2018)………………………………………………………….16, 17

*Groh v. Ramirez,*

 540 U.S. 551 (2004)……………………………………………………………...16

*Illinois v. Gates,*

 462 U.S. 213 (1983)…………………………………………………………….16, 28

*Maryland v. Garrison,*

 480 U.S. 79 (1987)……………………………………………………………….17

*Payton v. New York,*

 445 U.S. 573 (1980)……………………………………………………………...16

*Riley v. California,*

 573 U.S. 373 (2014)…………………………………………………………...16, 17, 28

*Schneckloth v. Bustamonte,*

 412 U.S. 218 (1973)……………………………………………………………...16

*United States v. Benevento,*

 836 F.2d 60 (2d Cir. 1987)……………………………………………….....19, 20, 27

*United States v. Disla Ramos,*

 2022 WL 17830637 (S.D.N.Y. Dec. 21, 2022)…………………………19, 20, 21, 23, 24

*United States v. Falso,*

 544 F.3d 110 (2d Cir. 2008)…………………………………………………...18

*United States v. Fama,*

 758 F.2d 834 (2d Cir. 1985)………………………………………...……..26, 27

*United States v. Galpin,*

 720 F.3d 436 (2d Cir. 2013)…………………………………………………….16, 22

*United States v. Gatto*,

    313 F. Supp. 3d 551 (S.D.N.Y. 2018)……………………………………...……..18, 25

*United States v. Gomez*,

    652 F. Supp. 461 (E.D.N.Y. 1987)……………………………………………………28

*United States v. Harvey*,

    2022 WL 684050 (E.D.N.Y. Mar. 8, 2022)……………………………...……..….25, 27

*United States v. Indelicato*,

    865 F.2d 1370 (2d Cir. 1989)………………………………………………………..…19

*United States v. Jones*,

    565 U.S. 400 (2012)……………………………………………………………...…20

*United States v. King*,

    2022 WL 875383 (S.D.N.Y. Mar. 24, 2022)………………………...…19, 20, 25, 26

*United States v. Lustyik*,

    57 F. Supp. 3d 213 (S.D.N.Y. 2014)………………………………………………..…18

*United States v. Ortega*,

    2022 WL 16647779 (S.D.N.Y. Nov. 2, 2022)…………………………………...22, 23, 24

*United States v. Pinto-Thomaz*,

    352 F. Supp. 3d 355 (S.D.N.Y. 2021)…………………………………..……….22, 23, 24

*United States v. Ray*,

    541 F. Supp. 3d 355 (S.D.N.Y. 2021)…………………………………………...22, 23, 24

*United States v. Raymonda*,

    780 F.3d 105 (2d Cir. 2015)…………………………………………………………...16

*United States v. Robinson*,

    2018 WL 5928120 (E.D.N.Y. Nov. 13, 2018)…………………………...….25, 26, 27

*United States v. Singh*,

    390 F.3d 168 (2d Cir. 2004)…………………………………………………...........18, 27

*United States v. Travisano*,

    724 F.2d 341 (2d Cir. 1983)……………………………………………………...18

*United States v. Ulbricht*,

    858 F.3d 71 (2d Cir. 2017)………………………………………………………...…22

*United States v. Walker*,

    2023 WL 3451419 (2d Cir. May 25, 2023)…………………………………………...21

*Zurcher v. Stanford Daily*,

    436 U.S. 547 (1978)………………………………………………………………...…18

## Constitution:

U.S. Const. amend IV…………………………………………………………………...15

## I.   INTRODUCTION

On the afternoon of March 7, 2021, a man (Suspect-1) pried open the door of the Investors Bank on Fifth Avenue in New York, NY and spent about five minutes rummaging around before leaving emptyhanded.  On March 10, 2021, in the early morning, a man (Suspect-2) broke into the People's United Bank on Seventh Avenue, spent about five minutes inside, and left emptyhanded.  In both instances, surveillance cameras captured the respective suspects.  Each was alone and his face was covered with a surgical mask.  No witnesses identified either suspect.  No cell phone or electronic devices were recovered at the crime scenes, nor were any such devices visible in any of the surveillance images.

Eighteen days after the second attempted burglary, law enforcement obtained a warrant to search Mr. Daniel Bertini's residence.  He lived near the Fifth Avenue Investors Bank and had previous convictions for bank burglary.  The government relied on those previous convictions, as well as surveillance footage showing "a man believed to be Bertini," and separately, "a male individual with Bertini's build," walking in and out of Mr. Bertini's apartment building on the days of the attempted burglaries.  In the search of Mr. Bertini's residence on March 31, 2021, law enforcement failed to recover any clothing matching that worn by the Suspects shown in the banks' surveillance footage.  And only standard household tools—a screwdriver and claw hammer—were recovered.  The government then relied, in

part, on the fruits of that search to obtain a series of warrants for Mr. Bertini's historical cell phone location information and toll records, stored electronic communications associated with his Gmail address, and his cell phone. Critically, none of the warrants make allegations connecting the things and places to be searched with the attempted burglaries.

This motion challenges three warrants to search and seize: (1) historical cell phone location information and toll records; (2) stored electronic communications associated with Mr. Bertini's Gmail account; and (3) Mr. Bertini's cell phone. The search warrants violated Mr. Bertini's Fourth Amendment rights because their supporting affidavits did not establish a sufficient nexus between the property and places to be searched and the criminal activities at issue, and thus lacked probable cause that the specific evidence being sought would be found therein. Accordingly, the Court must suppress any materials obtained pursuant to the warrants.

## II.    RELEVANT FACTS[1]

On March 25, 2021, law enforcement procured a warrant to search Mr. Bertini's residence based on a belief that he had committed bank burglaries of Investors Bank in New York, NY on March 7, 2021 and of People's United Bank in

---

[1] Attached to this motion are:
Ex. A: Historical cell phone location information and toll records search warrant and affidavit (USAO_000168-000185)
Ex. B: Stored electronic communications search warrant and affidavit (USAO_000189-000210)
Ex. C: Cell phone search and seizure warrant and affidavit (USAO_000219-000246)

New York, NY on March 10, 2021.  Ex. A. at USAO_000179.  The search was executed on March 31, 2021.  *Id*. USAO_000180.  The search revealed an item of clothing that the person "believed to be Bertini" was wearing while leaving and returning to Mr. Bertini's apartment building on March 7, 2021, as well as a Target tote bag resembling that which the individual was carrying.  *Id*.  Law enforcement also found various household tools, including a screwdriver and claw hammer.  *Id*. Law enforcement did not, however, recover any clothing matching that of the Suspects shown in the March 7 and March 10 bank surveillance footage.

The government relied, in part, on the fruits of that residence search to obtain a warrant on May 26, 2021 for Mr. Bertini's historical cell phone location information and toll records.  Ex. A.  On June 30, 2021, Mr. Bertini was arrested for an unrelated offense and his cell phone was confiscated in the course of that arrest. Ex. B. at USAO_000200.  Following Mr. Bertini's arrest for that unrelated offense, the government obtained a search warrant on September 27, 2021 for stored electronic communications connected to his Gmail account and a warrant on December 3, 2021 to search his cellphone.  Ex. B; Ex. C.

The supporting affidavits for all three warrants were sworn to by FBI Special Agent Christopher Harper.  The affidavits all lay out identical facts, largely as recited above, to argue probable cause "to believe that Bertini has committed attempted burglaries of federally insured banks in Manhattan."  Ex. B. at USAO_000194.  But

no particularized facts linking the places and things to be searched to the offenses are provided in any of the affidavits. For example, none of the affidavits allege the existence of co-conspirators, claim that a cell phone or electronic device aided in the execution of the attempted burglaries, or assert that surveillance footage shows any of the individuals (Suspect-1, Suspect-2, the man believed to be Bertini, or the male individual with Bertini's build) using or carrying a cell phone or electronic device. Nor do the supporting affidavits build on the previous warrants. Indeed, the September 27, 2021 stored electronic communications warrant affidavit does not reference any evidence obtained via the May 26, 2021 historical cell phone location information warrant, and the December 3, 2021 cell phone warrant similarly does not reference any facts or evidence revealed by the two previous warrants. Details of each warrant and application are laid out in further detail below.

### A. The May 26, 2021 warrant sought historical cell phone location information and toll records of Mr. Bertini's phone.

On May 26, 2021, the government sought a warrant for historical cell site location information for Mr. Bertini's phone. Ex. A. The warrant sought "historical cell site data" from March 6 through March 11, 2021, as well as toll records for the same period. Ex. A. at USAO_000168-69. The warrant listed the "subject offenses" as "bank burglaries and/or attempted bank burglaries." *Id*. at USAO_000173.

To establish that the subject offenses had been committed, the affidavit in support of the warrant recited descriptions of the video surveillance of the "victim" banks.  *Id*. at USAO_000174-77.  To support the conclusion that Mr. Bertini committed those attempted burglaries, the affidavit relied on March 7, 2021 surveillance footage of the man "believed to be Bertini," as well as the March 10 surveillance footage of the "male individual with Bertini's build," leaving and returning to Mr. Bertini's apartment. *Id*. at USAO_000177-79.  The affidavit posited that the movements of those individuals in and out of the Bertini Residence, as well as the recovery of common household tools, a Target tote bag, and the two jackets— neither of which were worn by the suspects in the surveillance videos of the attempted burglaries—were sufficient to provide probable cause to link Mr. Bertini to the offenses.

In the affidavit section entitled, "Probable Cause to Believe that the Target Cellphone Belongs to the Target Subject and that the Requested Information Will Provide Evidence of the Subject Offenses," the affidavit did not allege that Suspect-1 or Suspect-2 used cell phones during the attempted burglaries, nor that a cell phone was pictured anywhere in the surveillance images.  The affidavit does not allege that the individual assumed to be Mr. Bertini, or the "male individual with Bertini's build" are pictured using or carrying cell phones.  Nor does it allege that any cell phone or electronic device was recovered at the scene of the crimes.

Instead, the affidavit makes sweeping statements that, based on Special Agent

Harper's training, experience, and participation in the investigation:

> "Individuals conspiring to commit offenses such as the Subject Offenses often use cellphones during and in furtherance of their criminal activity. For example, individuals engaged in the Subject Offenses often use cellphones to conduct surveillance of, or to navigate to, their target locations. Based on my training and experience, I also know that individuals often use cellphones for unrelated reasons prior to and/or following the commission of their criminal activity, and keep the cellphones on their person during the interim. For the foregoing reasons, I believe that individuals engaged in the Subject Offenses often have cellphones on their person prior to, during, and/or after the commission of such offenses, and that the Requested Information will assist law enforcement with determining the location of the Target Subject at the times that the Subject Offenses were committed." *Id*. at USAO_000181.

**B. The September 27, 2021 warrant sought all stored electronic communications associated with Mr. Bertini's Google account.**

On September 27, 2021, the government obtained a warrant for all stored electronic communications associated with the Google account, danielbertini29@gmail.com. Ex. B. at_USAO_000190. The warrant casts a sweeping dragnet over information, including email and instant message contents, address book, calendar, document management in Google Drive, subscriber and billing information, transactional information, browsing history, location history, web searches, and webpages or IP addresses visited. *Id.* at USAO_000191-93.

The supporting affidavit provides a nearly identical basis for establishing the subject offense has been committed as the May 26, 2021 historical cell site location

warrant.  The only additional fact provided is that Mr. Bertini was arrested on June 30, 2021 and that law enforcement had recovered "a yellow crowbar," which the government characterized as "burglar's tools," in connection with that arrest.  *Id.* at USAO_000200.  No facts linking the Google account to the attempted burglaries are provided.

The affidavit alleges that, upon belief, the search of Mr. Bertini's stored electronic communications will provide evidence of

1. "The whereabouts of Bertini at the approximate time that the Subject Offenses were committed";

2. "The planning and execution of the Subject Offenses";

3. "The motives behind their commission," including financial need or gain; and

4. "Attempts to alter patterns of criminal activity related to the Subject Offenses, following Bertini's contact with law enforcement on or about March 10, 2021."

*Id.* at USAO_000202-03.

Like the May 26, 2021 warrant's supporting affidavit, the Google account affidavit does not provide particularized facts linking the things to be searched with the offenses.  The affidavit does not allege that emails relating to the attempted burglaries were sent or received from the target email address.  Nor does the affidavit allege the existence of co-conspirators with whom Mr. Bertini was corresponding.  Instead, the stored electronic communications warrant relies exclusively on Special

Agent Harper's training and experience as the basis for believing that the above

evidence would be discovered in Mr. Bertini's Google account:

> "I believe that individuals committing offenses such as the Subject Offenses
> often use electronic devices, and conduct online activity, during and in
> furtherance of their criminal activity.  For example, based on my training and
> experience, I believe that individuals engaged in the Subject Offenses often
> use cellphones to navigate to or from, or to conduct surveillance of, their target
> locations, or to conduct online research in advance of carrying out their
> offenses.  I also know that individuals often use electronic devices, such as
> cellphones, for unrelated reasons prior to and/or following the commission of
> their criminal activity, and keep the devices on their person during the interim.
> For the foregoing reasons, I believe that individuals engaged in the Subject
> Offenses often have electronic devices on their person, and use such electronic
> devices to, among other things, conduct online activity, prior to, during,
> and/or after the commission of such offenses.  As such, I believe that location
> history and other information associated with the Subject Account and stored
> on the Provider's servers will provide evidence concerning the whereabouts
> of BERTINI at the approximate times that the Subject Offenses were
> committed.  I also believe that email communications, online search history
> data, and other information stored on the Provider's servers will provide
> evidence concerning the planning and execution of the Subject Offenses and
> the motives behind their commission."  *Id.* at USAO_000201-03.

### C. The December 3, 2021 warrant sought to seize and search Mr. Bertini's cell phone.

On December 3, 2021, the government obtained a warrant for the search and

seizure of Mr. Bertini's cell phone, obtained via his arrest for an unrelated offense.

The affidavit puts forth the expectation that the following evidence was "likely to be

found" on Mr. Bertini's phone:

1. "Evidence concerning the identity of the owner and/or user of the Subject Device on or about March 7, 2021, and on or about March 10, 2021";

2. "Contact or personal identifying information, including names, phone numbers, addresses, email addresses, or social media profiles, for any co-conspirators involved in the Subject Offenses";

3. "Text, chat, MMS (*i.e.*, multimedia messaging service), SMS (*i.e.*, short message service), and email messages, or messages on social media or messaging applications installed on the device . . . pertaining to the Subject Offenses, including, but not limited to, communications regarding the planning, execution, and aftermath of burglaries and attempted burglaries; motive to commit the Subject Offenses, including financial need or gain; and/or attempts to alter patterns of criminal activity related to the Subject Offenses following on or about March 10, 2021";

4. "Digital photographs and video evidence, incoming and outgoing calls, opened and unopened voicemails, calendar or other scheduling information, and/or online search history information, concerning the planning, execution, and aftermath of burglaries and attempted burglaries; motive to commit the Subject Offenses, including financial need or gain; and/or attempts to alter patterns of criminal activity related to the Subject Offenses following on or about March 10, 2021"; and

5. "Historical location data showing the movements of the user of the Subject Device."

Ex. C. at USAO_000225-26.

The affidavit recites facts identical to those in the stored electronics communications warrant to provide the basis for probable cause. There are no facts

alleging the cell phone's use in connection with the subject offenses, appearance in any of the surveillance images, recovery from the crime scenes, or even physical presence at the crime scenes. Nor does the affidavit provide any facts alleging the existence of co-conspirators. Instead, like the previous two affidavits, the affidavit's expectation for evidence to be recovered is based solely on Special Agent Harper's training and experience that:

> "…Individuals engaged in offenses such as the Subject Offenses often use cellphones during and in furtherance of their criminal activity. For example, based on my training and experience, I believe that individuals engaged in the Subject Offenses often use cellphones to navigate to or from, or to conduct surveillance of, their target locations; to conduct online research in advance of carrying out their offenses; and/or to communicate with others concerning the planning and execution of the Subject Offenses, and concerning subsequent attempts to avoid detection by law enforcement. I also know that individuals often use electronic devices, such as cellphones, for unrelated reasons prior to and/or following the commission of their criminal activity and keep the devices on their person during the interim."

*Id*. at USAO_000223-24.

## III.    LAW AND ANALYSIS

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Any governmental intrusion or search of a private area without a warrant

supported by probable cause is presumptively unreasonable. *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 559 (2004); *Payton v. New York*, 445 U.S. 573, 586 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

For a warrant to issue, a neutral and detached magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). Whether a search warrant is supported by probable cause turns on whether there is a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (internal citations omitted).

The search warrant requirement extends to searches of data on cell phones, in recognition of the "vast quantities of personal information literally in the hands of individuals" when a cell phone is seized. *Riley v. California*, 573 U.S. 373, 386 (2014). In 2018, *Riley* was extended to encompass historical cell site location information. *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Notably, "[t]he chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (internal citation omitted). General warrants allowed "wide-

ranging exploratory searches," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), and gave the Government "unbridled discretion to rummage at will among a person's private effects," *Arizona v. Gant*, 556 U.S. 332, 345 (2009). "Opposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley*, 573 U.S. at 403. With the advent of technology and ubiquity of cell phones, the Supreme Court has recognized the importance of protecting individual privacy when "a cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Carpenter*, 138 S. Ct. at 2218.

**A. The Court should suppress the materials seized pursuant to the three warrants because the affidavits do not provide any particularized facts linking the things to be searched with the criminal activities, relying instead solely on the affiant's training and expertise and thus rendering the warrants unsupported by probable cause.**

The Fourth Amendment's principles apply with particular force in the digital age, where large amounts of private information can be captured in an instant. With the three warrants, the magistrate court authorized the seizure of a chronicle of Mr. Bertini's movements for nearly a week, a trove of private personal information. Because none of the warrants' supporting affidavits assert a sufficient nexus between the things to be searched and the alleged criminal activities—instead relying on the affiant's sweeping generalizations to establish a substantial basis to believe that evidence will be discovered—the warrants were unsupported by probable cause.

### 1. All three warrants lacked a sufficient nexus between the things and places to be searched and alleged criminal activities.

"It is irrelevant whether the owner, proprietor, or inhabitant of the place to be searched is suspected of committing a crime; the 'critical element' of a reasonable search is 'that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located' in the place to be searched." *United States v. Lustyik*, 57 F. Supp. 3d 213, 223 (S.D.N.Y. 2014) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). For a search warrant to supply probable cause, "all data necessary" to show it "must be contained within the four corners of [a] written affidavit given under oath." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (internal quotation marks omitted). The supporting affidavit must make "two factual showings 'first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located [in the place to be searched].'" *Lustyik*, 57 F. Supp. 3d at 224 (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)).

The required nexus between "the alleged criminal activities and the place to be searched '… may be based on reasonable inference from the facts presented based on common sense and experience.'" *See United States v. Gatto*, 313 F. Supp. 3d 551, 558 (S.D.N.Y. 2018) (quoting *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)). An affiant agent's expertise, when accompanied by other facts showing

a connection between the thing or place to be searched and criminal activities, can provide the required nexus. *United Sates v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989); *see also United States v. King*, 2022 WL 875383 (S.D.N.Y. Mar. 24, 2022) (phone search warrant upheld where agent's training and experience was supplemented by surveillance footage showing defendant holding target phone "minutes before the shooting"); *United States v. Disla Ramos*, 2022 WL 17830637 (S.D.N.Y. Dec. 21, 2022) (probable cause for cell site warrant found based on affiant's training and experience and evidence that co-conspirators were in contact via phone one hour before the offense).

Here, unlike in *United States v. King*, none of the affidavits discuss surveillance images—either of the man believed to be Bertini, the individual of the same size as Bertini, Suspect-1, or Suspect-2— using, or even in possession of, a cell phone or email-linked device that could link the target devices to the attempted burglaries. 2022 WL 875383. Similarly, unlike in *United States v. Disla Ramos*, there is no evidence provided of the existence of co-conspirators, or the use of a cell phone or email at all in connection with the attempted burglaries—much less within a temporal span that would connect them to the offenses. 2022 WL 17830637. There are simply no allegations provided, in any of the affidavits, to provide a

sufficient nexus between the cell site location information, stored electronic communications, or even Mr. Bertini's cell phone, and the attempted burglaries.

> ### a. The cell site location information and toll warrant is unsupported by probable cause because the affidavit did not establish a sufficient nexus between Mr. Bertini's phone and the attempted burglaries.

The historical cell site location information warrant authorized the government to "follow" Mr. Bertini for almost a week, creating a "comprehensive record" of Mr. Bertini's "public movements" which can "reflect[s] a wealth of detail about [his] familial, political, professional, religious, and sexual associations." *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring). This was carried out under a warrant that failed to establish a sufficient nexus between Mr. Bertini's phone and the attempted burglaries. Thus, any material seized pursuant to the warrant should be suppressed.

Like all other warrants, a cell site location information warrant is supported by probable cause when the affidavit can establish a sufficient nexus between the target cell phone and the criminal activities. As noted above, the affidavit must contain something more than the affiant's training and experience. *Benevento*, 836 F.3d at 71. For instance, in *Disla Ramos*, the use of the target cell phone to call another robbery participant shortly before the crime was an integral piece of the "tapestry that easily supplie[d] the probable cause necessary for the Cell Site

Warrant." 2022 WL 17830637 at *7; *see also United States v. Walker*, 2023 WL 3451419, at *4 (2d Cir. May 15, 2023) ("[T]he affidavits supporting [the Cell-Site Warrants] provide ample probable cause to support the authorized searches, including *inter alia* . . . text messages among the three conspirators planning the subject robberies, and seizure of the devices in question from Walker upon his arrest.").

There is no such tapestry here. The supporting affidavit can only offer the affiant's training and experience. The affidavit makes no mention of surveillance images showing the presence of the target cell phone at either the Investors Bank or People's United Bank crime scenes, nor in the possession of Suspect-1 or Suspect-2. Further, unlike in *Disla Ramos*, there are no allegations of calls being placed in possible connection with the offense, or even to a co-conspirator. 2022 WL 17830637 at *7. There is simply nothing that would establish the requisite nexus between the target cell phone's location data and the attempted burglaries. It is not enough, therefore, for the government to merely allege that a crime was committed, and that Mr. Bertini allegedly committed it. Violating Mr. Bertini's privacy and tracking his every move for almost an entire week requires the government to establish a basis to believe that the phone was linked to the crime. The government failed to meet that burden. The materials seized pursuant to the cell phone location information and toll records should accordingly be suppressed.

### b. The stored electronic communications warrant is unsupported by probable cause because the affidavit did not establish a sufficient nexus between Mr. Bertini's Google account and the attempted burglaries.

Like the privacy concerns raised by rummaging around in individuals' phones and historical location data, "the potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous.   This threat is compounded by the nature of digital storage."  *Galpin*, 720 F.3d at 447.  The principle expressed in *Galpin* extends to cloud and Google accounts as well.  As the supporting affidavit says, the electronic communications associated with an individual's email address can reveal their address book, calendar, documents, purchase history, location history, browsing history, and more— "akin to a residence in terms of the scope and quantity of private information [they] may contain." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017).

Probable cause exists to search stored electronic communications, including emails and cloud accounts, when there are emails—or in the case of cloud accounts, linked phone numbers—implicated in criminal activities.  *See United States v. Ortega*, 2022 WL 16647779, at *4 (S.D.N.Y. Nov. 2, 2022); *United States v. Ray*, 541 F. Supp. 3d 355, 372 (S.D.N.Y. 2021); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 305 (S.D.N.Y. 2018).  A nexus between criminal activity and cloud and/or email accounts is usually only found in cases involving conspiracy or crimes

that inherently require communication about the offenses, such as insider trading or fraud.  For example, in the case of a narcotics conspiracy resulting in death, a sufficient nexus was established between the defendant's iCloud account and the criminal activity because the phone number linked to the account sent texts about drug deals to the overdose victim.  *See Ortega*, 2022 WL 16647779.  Similarly, in *United States v. Ray*, email and iCloud warrants in a trafficking conspiracy spanning several years were supported by probable cause because the affidavit cited "extensive communication with victims and co-conspirators and communications in furtherance of the subject offenses."  541 F. Supp. 3d at 372.  Finally, in a securities fraud insider trading scheme, "ample" probable cause connected the subject iCloud and Gmail accounts to the crimes charged because the supporting affidavit showed that emails related to the scheme were received to the target Gmail account, and similarly related texts were sent from the phone number linked to the iCloud.  *Pinto-Thomaz*, 352 F. Supp. 3d at 305.

*Disla Ramos*, on the other hand, is a useful foil for what does not show sufficient nexus to criminal activities.  2022 WL 17830637 at *17.  There, the court found that the supporting affidavit's "threadbare and conclusory references . . . provided no reason to believe that evidence of the crime would be found on electronic devices," and drew "no link between . . . the cellphone, which was clearly implicated in the criminal activity, and other electronic storage media."  *Id*.  Though

the *Disla Ramos* court's finding was about "electronic devices" instead of stored electronic communications, the same principle extends to email and cloud accounts.

Here, the supporting affidavit purporting to provide the probable cause with which to peruse Mr. Bertini's private information most closely resembles that in *Disla Ramos*. 2022 WL 17830637 at *17. The affidavit does not set forth any messages or emails relating to the attempted burglaries, much less "extensive communications" in furtherance of the offenses, as was the case in *Ray*, *Ortega*, and *Pinto-Thomaz*. *See Ray*, 541 F. Supp. 3d at 372; *Ortega*, 2022 WL 16647779; *Pinto-Thomaz*, 352 F. Supp. 3d at 305. Nor does the affidavit allege that the email linked to the target Google account received emails related to any conspiracy or plans around the attempted burglaries. In sum, the supporting affidavit here only contains threadbare and conclusory references, based solely on the affiant's training and experience, and wholly insufficient to provide probable cause to search. Any material seized pursuant to the stored electronics communication warrant must therefore be suppressed.

### c. The cell phone warrant is unsupported by probable cause because the affidavit did not establish a sufficient nexus between Mr. Bertini's phone and the attempted burglaries.

Sufficient nexus is found between a cell phone and alleged criminal activities when the four corners of the affidavit contain information establishing either the phone's use or physical placement in connection with the offense, in addition to the

affiant's training and experience.  *See Gatto*, 313 F. Supp. 3d at 558-559; *King*, 2022 WL 875383 at *4; *United State v. Harvey*, 2022 WL 684050, at *8 (E.D.N.Y. Mar. 8, 2022); *United States v. Robinson*, 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018).  More specifically, courts have found that a sufficient nexus is established when there is information regarding the phone's use in relation to or in furtherance of an alleged conspiracy, surveillance footage of a suspect using the phone immediately before or after the alleged crime, or where the phone is recovered from the crime scene.

In *United States v. Gatto*, for example, the court found a sufficient nexus between the defendants' phones and the criminal activities in a wire fraud and money laundering case.  313 F. Supp. 3d at 558-559.  There, the *Gatto* court found it reasonable to infer that, because defendants used the phones "to make calls and send text messages related to the alleged scheme," other related communications and evidence would be found on the phone.  *Id*.  Likewise, in *United States v. King*, the court upheld a cell phone search warrant when surveillance footage showed the defendant holding the phone "just minutes before" the shooting in a bodega.  2022 WL 875383 at *4.  In *United States v. Harve*y, there was sufficient nexus because the defendant was recorded using a cell phone "moments after" an attempted robbery and shooting.  2022 WL 684050 at *8.  And in *United States v. Robinson*, that the

phone was recovered at the scene of the crime "supplie[d] sufficient factual nexus to justify the search."  2018 WL 5928120, at \*16.

Here, once again, there is no physical, conspiratorial, visual, or other link between Mr. Bertini's targeted cell phone and the attempted burglaries.  The supporting affidavit does not offer any allegations that Mr. Bertini sent messages or made calls related to the criminal activities the government purports he undertook. It does not point to surveillance footage featuring the target cell phone, or any cell phone, as was the case in *King*.  2022 WL 875383 at \*4.    Nor was the cell phone recovered from the scene of either attempted burglary, as it was in *Robinson*.  2018 WL 5928120, at \*16.  Here, law enforcement simply seized it from Mr. Bertini upon his arrest for an unrelated offense months later.  There is thus no sufficient nexus between Mr. Bertini's cell phone and the criminal activities alleged here and, as such, any material seized pursuant to the cell phone search and seizure warrant must be suppressed.

> **2. Without any particularized facts linking the places and things to be searched with the attempted burglaries, the affiant's "training and expertise" is wholly insufficient to establish probable cause for the warrants.**

Agent expertise is an "important factor" in determining whether probable cause exists for a search warrant.  *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).  However, agent expertise alone does not provide sufficient basis for such

probable cause. *See Benevento*, 836 F.2d at 71 ("agent's testimony, standing alone, might not be sufficient to establish a link" between target residences and prior criminal activity, but when considered with other evidence in affidavits, probable cause was found); *Fama*, 758 F.2d at 837-38 (objectively reasonable to believe probable cause to search residence existed based on expert opinion, huge scale of business, and millions of dollars in cash on hand, "consistent with the belief" that the defendants "were incorrigible criminals"); *Singh*, 390 F.3d at 182 (agent expertise supplemented with informant information linking the target residence with the criminal activities was sufficient to establish probable cause); *Harvey*, 2022 WL 684050 at *8 ("the Court doubts whether the magistrate had a substantial basis for finding that probable cause existed" for a social media warrant when the affiant's training and experience that "individuals engaged in criminal conduct" was only supplemented by a single social media photo of the suspect wearing the same sweatshirt as he was wearing in surveillance footage of the offense); *Robinson*, 2018 WL 5928120 at *15 (finding affiant supplemented his beliefs based on training and experience with colorable allegations that the residence contained evidence of the crime, including that defendant was observed with and discarded around the residence "potential instrumentalities of the crime," such as guns and zip ties).

Where there are no facts or evidence provided to connect criminal activities with the place to be searched, "to issue a warrant based solely on the agent's expert

opinion would be to license virtually automatic searches of residences of persons arrested. . . . This would effectively eviscerate the fourth amendment's [sic] requirement that there be probable cause to believe 'that contraband or evidence of a crime will be found *in a particular place.*'" *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (quoting *Gates*, 462 U.S. at 238). That agent expertise is weighed as a factor rather than a singular element required to provide a sufficient nexus, is a necessary privacy safeguard. As the Supreme Court put it in *Riley*, "It would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." 573 U.S. at 399.

Here, the three warrants to search Mr. Bertini's cell site location information and toll records, stored electronic communications, and cell phone, rely solely on the affiant's expertise and sweeping generalizations about the way criminals behave. There is not a single fact provided in the supporting affidavit, independent of the affiant's training and expertise, that could establish a sufficient nexus between the target phone and email account and the criminal activities. As such, there is no probable cause to believe that the specific things to be searched for and seized will be located in the target locations and the evidence must be suppressed.

## IV.   CONCLUSION

The government's cell phone location information and toll records warrant, cell phone warrant, and stored electronic communications warrant fail spectacularly to establish any nexus—much less a sufficient nexus—between the things and places to be searched and the attempted burglaries.  The sweeping generalizations in the warrants' supporting affidavits, based entirely on the affiant's training and experience, do not establish probable cause to track Mr. Bertini's every move for almost a week.  Nor do they establish probable cause to peruse years of his private cell phone and Google account information.  Accordingly, for the reasons set forth above, the Court should suppress the materials seized pursuant to the warrants in whole or in part.

Dated: August 25, 2023

Respectfully Submitted,

/s/ _____

**Kristoff I. Williams**

Assistant Federal Defender
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212)-417-8791